CYRUS J. DOVE v. THE ROYAL INSURANCE COMPANY.

*Fire insurance—Contract—Evidence—Pleading—Variance.*

1. The construction of oral testimony is for the jury, unless it be such that only one inference can be drawn from it.

2. Where, in a suit upon an insurance policy, the question whether the plaintiff was or was not insured is one of law and fact, it is error to permit the plaintiff to testify that he believed in good faith that he was insured.

3. A policy of insurance varying only from the one described in the declaration, which covers several items, in that but $100 is written upon a barn, while the policy counted upon calls for $400 insurance on said building, cannot be received in evidence under the pleadings without amendment.

Error to Muskegon. (Dickerman, J.) Argued November 17, 1893. Decided December 8, 1893.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Bunker & Carpenter,* for appellant.

*Stephen H. Clink,* for plaintiff.

MONTGOMERY, J. This is an action on a policy of insurance. The plaintiff recovered, and the defendant brings error. The record contains 32 assignments of error.

We shall discuss only those which present questions liable to arise upon another trial. The principal question presented is whether any binding contract of insurance was ever made. The facts were these: The plaintiff had previously been insured by the defendant company, and had suffered a small loss of $5.20, of which he had made no regular proof, as required by the rules of the company. The policy in question was a renewal, and was written and presented by the local agent of the company, Leigh B. Smith. At the time of presenting the policy to the plaintiff, a bill for the premium, amounting to $9, was also presented. The parties are not fully agreed as to what took place at the conference. Both agree that the plaintiff asked to be credited for the $5.20 loss, and offered to pay the balance. Both also agree that this proposition was declined by the agent. The agent's version of what followed is as follows:

"I told the plaintiff that, inasmuch as there seemed to be a misunderstanding in regard to the five dollar matter between himself and Mr. Wood, in order to satisfy him thoroughly, I would take the policy back to my office, and hold it a couple of days, giving him time to call and talk to Mr. Wood in regard to it. I told him that Mr. Wood,— the result would be the same; that that five dollars could not be allowed him; and that, if he didn't call within a couple of days' time, the policy must be sent in to the company."

The plaintiff's version of the conversation is as follows:

"After Smith stated that he wouldn't allow the $5.20, I said to him, 'I will pay you for what time you have carried my insurance, and you may cancel that policy, and I will get insurance elsewhere.' He stood a moment, and he said, 'No, I won't do that.' He said: 'You come up. I will take this policy, and I will hold it in force, and you come up to the office, where Mr. Wood is, and we will talk it over, and we will fix it up some way satisfactory.' He said, 'We want to do what is fair by everybody.' Then he took the policy and the bill,—I think took them both. There was no time stated when I should come. He

didn't say how long he would hold the policy. He said: 'I will hold this policy good; you come up.' He said when he was going away that he would hold it in force."

This conversation occurred on the 18th of September. The plaintiff further testified that on the 18th of November he called up the office of Mr. Smith by telephone, and had a conversation with Mr. Wood, a clerk in the office, who, as the record shows, had charge of the business in the absence of Mr. Smith, and told Mr. Wood that he was about to go to Chicago for a few days, and wanted to know if his insurance was in force before he went, and was assured that it was in force, and that his property was covered. It further appears that the agent reported the policy to the company in his monthly account, and himself paid the premium. There was also stamped on the back of the policy the following: "Canceled. Date, October account, 1891. At full Ret. Prem., $9. Non-pmt. Royal Insurance Co., Nov. 18, 1891. Received. Chicago."

The appellant contends that it was error to refuse to direct a verdict for the defendant on the ground that the policy was not in force at the time of the fire. We do not think that the court erred in this regard. If the plaintiff's version of what took place is accepted as true, it was for the jury to say whether the parties to the conversation intended that the policy should continue in force for a reasonable time, and whether it was further understood that the assured undertook to pay the premium. The construction of oral testimony is for the jury, unless it be such that only one inference can be drawn from it. In this case we are not prepared to say that the agent and plaintiff may not have both assented to the proposition that the policy should remain in force, and that the matter in difference between them should be the subject of future agreement and adjustment. If the jury found that the plaintiff assented to this by his conduct, he would un-

doubtedly have been legally bound to pay the premium for the time that the policy was continued in force, and until its cancellation was directed by him. A failure to appear within a time satisfactory to the agent for the purpose of making the adjustment would undoubtedly have justified cancellation, but such cancellation could not be made effectual without notice to the assured. No such notice was given in this case. On the contrary, if the plaintiff's testimony be credited by the jury, the exact contrary was the fact, and the clerk assured the plaintiff, only seven days before the fire occurred, that the policy had been continued in force.

This case differs from those cited by the defendant's counsel, of which *Insurance Co. v. Ewing,* 92 U. S. 377, is an illustration. In that case there was no assurance by the agent that the policy should remain in force pending the adjustment of the differences, and nothing appeared from which it could be implied, nor from which an assent by the assured to the continuance of the policy in force could be inferred. The following cases in this Court sustain the views herein expressed: *Dibble v. Assurance Co.,* 70 Mich. 1; *Michigan Pipe Co. v. Insurance Co.,* 92 Id. 482; *Mallory v. Insurance Co.,* 90 Id. 112; *Elmondorph v. Insurance Co.,* 91 Id. 36.

We think it was error, however, for the circuit judge to permit the plaintiff to testify that he believed in good faith that he was insured by virtue of the policy from the time of the conversation with the agent, Smith, down to the time of the loss. Whether he was insured or not was a mixed question of law and fact. So far as it was a question of fact, its solution depended upon the interpretation to be given by the jury to the conversation which occurred between the plaintiff and the agent, Smith, and not upon the plaintiff's own undisclosed interpretation.

There was also error in receiving the policy in question

under the pleadings without amendment. The plaintiff declared upon a policy of insurance for $2,100, covering $800 on dwelling-house, $400 on household furniture, $400 on frame barn, $200 on frame office building, and $300 on office furniture and fixtures. The policy introduced was for $1,800, covering the same items set forth in the declaration, with the exception that but $100 appeared to be written upon the barn. This was a variance which could not, consistently with the rules of pleading, be overlooked.

We think none of the other questions presented are liable to arise upon a new trial of the case, but for the errors pointed out the judgment will be reversed, and a new trial ordered.

The other Justices concurred.